# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>796 East 4th Avenue in Columbus, Ohio 43201<br>with detached garage and curtilage | )<br>)<br>) Case No. 2:23-mj-378<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

796 East 4th Avenue in Columbus, Ohio 43201. The premises is a gray multi-story, single family residence located on the north side of East 4th Avenue. This premises includes a detached garage and curtilage. The front door faces south. The numerals "796" are mounted on a pillar located west of the stairs leading to the front door.

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Property that constitutes evidence of the commission of and/or property designed or intended for use or which is or has been used as a means to commit criminal offenses as described in Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 846 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.
☐ Delayed notice ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Jeffery A. Kirschweng*
*Applicant's signature*

DEA Special Agent Jeffrey Kirschweng
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/21/2023

*/s/ Chelsey M. Vascura*
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT FOR SEARCH WARRANT

Your Affiant, Jeffery A. Kirschweng, being duly sworn, does hereby depose and state as follows:

### I. INTRODUCTION

1. I am a Special Agent of the Drug Enforcement Administration (DEA), assigned to the Detroit Field Division, Columbus District Office (CDO). As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1).

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a seizure warrant.

3. I have been a Special Agent for the DEA since September 2021. I am currently assigned to the DEA Tactical Diversion Squad in Columbus, Ohio investigating any and all criminal activity of individuals who have participated in drug distribution networks in violation of Title 21 of the United States Code. I have received several hundred hours of training into, and including smuggling, packaging, concealment techniques, common drug language, conspiracy techniques, including the use of cellular and digital communications devices, common weights and measurements, and drug identification. During the course of my law enforcement career, I participated in several investigations involving narcotics trafficking. I received specialized training in narcotics trafficking and money laundering from the DEA and I have been personally involved in investigations concerning the possession, manufacture, transportation, distribution, and importation of controlled substances, as well as methods used to finance drug transactions. I have experience in debriefing defendants, participating witnesses, cooperating individuals, and other persons who have personal knowledge and experience regarding the amassing, conversion, transportation, distribution, and concealment of records and proceeds of trafficking in controlled substances. As a Special Agent, I have also participated in the execution of numerous search warrants at the residences and businesses of narcotics traffickers, safe houses, and supply houses. I have also participated in numerous arrests for drug-related offenses and investigations targeting individuals and organizations trafficking in heroin, fentanyl, cocaine, cocaine base ("crack"), marijuana, methamphetamine, and other controlled substances, as defined in Title 21, United States Code, Section 801.

3. As a DEA Special Agent, I have participated in numerous investigations which have resulted in the successful prosecution of individuals and organizations involved in trafficking heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine, fentanyl and other controlled substances. Through the course of these investigations, I have personally interviewed confidential sources and

other persons involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked concerning the practices of narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the course of my investigations and through my conversations with more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances

## II. PURPOSE OF AFFIDAVIT

4. This Affidavit is made in support of an Application under Rule 41 of the Federal Rules of Criminal Procedure for a Search Warrant for the following premises: the residential property located at **796 E 4th Ave, Columbus, Ohio 43201 including any outbuildings, vehicles and curtilage** (hereinafter referred to as the **TARGET LOCATION**). This premises is more fully described in Attachment A incorporated herein by reference.

5. Based upon the information below, I have probable cause to believe there is property that constitutes evidence of the commission of a criminal offense in the **TARGET LOCATION**; contraband, the fruits of crime, and things otherwise criminally possessed; and property designed or intended for use or which is or has been used as a means of committing a criminal offense. Specifically, I have probable cause to believe that within the above-mentioned property there is evidence of violations of Title 21, U.S.C. § 846, Conspiracy to Possess with Intent to Distribute a Controlled Substance (Fentanyl). Based on my training and experience, as described above, I believe that there is probable cause to believe that the items listed in Attachment B (incorporated herein by reference) will be found at the **TARGET LOCATION** described in Attachment A.

6. The information contained in this Affidavit is largely based upon investigations conducted by your Affiant and other law enforcement officers. All of the details of the investigation are not included in this Affidavit, only information necessary to establish probable cause that evidence associated with drug trafficking offenses is located at/in the **TARGET LOCATION**.

## III. FACTS SUPPORTING PROBABLE CAUSE

7. In or about April 2023, investigators assigned to the DEA's Newark Field Division asked investigators assigned to the DEA's Columbus District Office to assist them with an ongoing money laundering investigation. Investigators in New Jersey requested the Columbus DEA provide an undercover investigator to meet with an unidentified money courier and take delivery of approximately

$50,000 in drug proceeds. At the meet location, a Hispanic male exited a red Nissan Altima, provided the money to the undercover investigator, and returned to the vehicle which had one other occupant. Following the money pick-up, DEA investigators surveilled the two Hispanic males as they drove away in the red Nissan Altima. Constant surveillance was maintained on the Altima as it travelled from the meet location to the **TARGET LOCATION**.

8. In or about May 2023, your Affiant was engaged in the investigation of a separate DTO in the Columbus, Ohio area. On or about May 3, 2023, a controlled buy of two ounces of fentanyl was arranged with a confidential source (CS) and one of the members of the DTO who was unidentified (hereinafter "UM") at the time. The CS arranged the transaction to occur in the area of 3424 S. High St, Columbus, Ohio, and was told by the UM two ounces of fentanyl would be $2,700.00. The CS was accompanied by your Affiant, acting in an undercover capacity, to the prearranged meeting location and was observed getting into the rear passenger seat of UM's vehicle. According to the CS, the CS provided UM the $2,700.00 of DEA funds, received the suspected fentanyl and exited the vehicle. UM was observed by your Affiant leaving the location in a white Honda Accord bearing Ohio license plate JVS 7793. UM was observed via physical surveillance returning to the **TARGET LOCATION** by DEA investigators. This CS has in the past provided law enforcement with information which was later corroborated through independent investigation. This CS is considered reliable.

9. On or about June 21, 2023, Columbus DEA investigators identified two male individuals arrive at the **TARGET LOCATION** in a red Nissan Altima via electronic surveillance. Utilizing electronic surveillance on June 21, 2023, investigators were also able to observe an unidentified male exit the rear of the **TARGET LOCATION** carrying two separate bags. The individual entered the garage at the **TARGET LOCATION** with the bas in hand. Approximately five minutes later, he was seen exiting the garage in the red Nissan Altima. DEA investigators then proceeded to the corner of High and Rumsey, an area where the DTO has been observed conducting prior drug transactions. DEA Investigators observed the red Nissan Altima at the location and a Hispanic male operating the vehicle.

10. Investigators then observed the Altima travel 71 Northbound to 70 Eastbound until Ohio State Highway Patrol (OSHP) conducted a traffic stop for window tint and following too close violations. The driver of the red Altima was then identified as Donaldo Michel Rosales PINEDO. Trooper Michael Rucker conducted a free air sniff with his K-9, who provided a positive alert to the presence of narcotics or controlled substance. Multiple individual baggies of a white and purple powdery substance of suspected fentanyl were located in the vehicle and hollowed-out cans of soup and iced tea were found to be concealing several ounces of the powdery substance, suspected to be fentanyl inside the bags viewed leaving the **TARGET LOCATION** through electronic surveillance. The

bags taken from the **TARGET LOCATION** were found on the rear floorboards. PINEDO was taken into custody.

11. Physical surveillance was maintained on the **TARGET LOCATION** during the duration of the traffic stop by DEA investigators. Approximately 10 minutes after the stop of PINEDO, a Hispanic male later identified as Jose Francisco Martinez-BARRIOS left the **TARGET LOCATION** carrying a black bag. BARRIOS was observed driving a Chevrolet Malibu bearing Ohio license plate KAU8483. As the vehicle turned into a parking lot at the corner of Cleveland and E 5th Avenue, Trooper Michael Rucker conducted a traffic stop for window tint violation. Once the Malibu came to a stop, BARRIOS exited the seat of the vehicle quickly in what appeared to be an attempt to separate himself from the vehicle. Trooper Rucker conducted a free air sniff of the vehicle with his K9, who provided a positive alert to narcotics or other controlled substances. Trooper Rucker was able to locate bulk United States Currency (USC) estimated to be tens of thousands of dollars, approximately ten cellular phones, a detailed ledger, and a black tar substance of suspected heroin in the black bag BARRIOS had been observed carrying from the **TARGET LOCATION**. BARRIOS was taken into custody.

### IV. COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

12. Based on my training, education, and experience, as well as training, education and experience of other law enforcement officers, I know:

    a. Drug traffickers often amass significant assets from their illegal drug trafficking activities.

    b. Drug traffickers often maintain large amounts of U.S. currency derived from illegal activities. It is common for individuals to secret contraband and conceal proceeds of drug sales and records of drug transactions in secure locations such as personal residences or businesses where they have ready access and control. Often, these locations are used to conceal the existence of substantial wealth from law enforcement authorities.

    c. Drug traffickers also attempt to legitimize their profits by converting it into other assets, such as stocks, bonds, precious metals, jewelry, real estate, vehicles and other assets. To accomplish these goals, these individuals utilize false and fictitious business records, nominee purchasers, foreign and domestic banks, securities, cashiers checks, money drafts, letters of credit, brokerage houses, real estate shell corporations and business fronts. These individuals conceal, in their residences, businesses, safes, safe deposit boxes, storage units and vehicles, currency, cashier's checks, money orders and other negotiable instruments, as well as the records relating to the acquisition, conversion,

4

movement, transfer, and disbursement of these funds and assets. Additionally, the drug traffickers themselves usually control access to these areas. Further, it is not uncommon for narcotics traffickers to "legitimize" their funds through casinos, documenting their "winnings" in an attempt to show an additional source of income.

d. Drug trafficker are not unlike other members of society in that they rely on credit and debit cards to make financial payments. Records relating to the use of these cards can provide valuable information to the investigation by establishing, among other things, the amount of money that is being spent by the suspects, their travel patterns (e.g., using a credit card to pay for gasoline on a cross-country trip), and may further identify businesses which are associated with the illegal activities of the suspects.

e. Drug traffickers deal in currency and store currency in conveyances, homes and at business sites. Furthermore, the Currency Transaction Report (CTR) (IRS Form 4789) is required to be completed and filed with the Internal Revenue Service by all financial institutions on every currency transaction that exceeds $10,000. This requirement causes tremendous problems for drug traffickers when they attempt to negotiate their illegal profits at financial institutions because these reports can be made available to law enforcement officials. It is quite common for individuals who deal in illegal controlled substances to convert drug proceeds (currency) into cashiers checks and or money orders in amounts less than $10,000 at numerous financial institutions over the course of several days in order to avoid the CTR filing requirement. Furthermore, drug traffickers often recruit other individuals to convert drug proceed currency for them in order to avoid handling the currency themselves.

f. Drug traffickers use financial habits designed to minimize and hide a paper trail. Traffickers often purchase and/or title their assets in fictitious names, aliases, or in the names of relatives, friends, associates or business entities to avoid detection of these assets by government agencies, especially the Internal Revenue Service. Regardless of documented ownership, the drug traffickers continue to use these assets and exercise control over them.

g. Drug traffickers maintain books, records, receipts, notes, ledgers, bank records, accounting records and other papers relating to the importation, manufacture, transportation, ordering, sale and distribution of controlled substances. These ledgers often contain amounts of drugs; accounting of payments made and received, accounts receivable and accounts payable used in furtherance of

5

their drug trafficking activities. These individuals commonly "front" (provide illegal controlled substances on consignment) illegal controlled substances to their clients and thus keep some type of record concerning moneys owed. Drug traffickers often maintain phone books, address books and other papers containing names, telephone numbers, and addresses of suppliers and purchasers of controlled substances. The names and numbers are often written in a code that requires drug traffickers to keep a key to their particular code.

12. The aforementioned books, records, receipts, notes, ledgers, codes, etc., are usually maintained in a secure location where dealers in illegal controlled substances have ready access to them such as on their person, vehicle, business, safe deposit box, home safe, personal or business computer, storage facility or in other residences or businesses where they periodically reside or have access and control.

13. It is not uncommon for individuals who deal in illegal controlled substances to take, or cause to be taken, photographs of themselves, their associates, their property and their illegal product. These individuals usually maintain these photographs in their possession or in residences where they reside or have access and control.

14. Drug traffickers commonly use cellular telephones to coordinate various narcotics trafficking activities. Other traffickers, in order to avoid speaking on telephones, use numeric codes on electronic devices to communicate with co-conspirators.

15. Drug traffickers often engage in domestic and/or international travel in relation to the smuggling of illegal contraband. Analysis of travel records and documents can assist in the development of the investigation by revealing potential source and/or destination locations related to the distribution of illegal narcotics or the payment of related proceeds.

16. Persons who traffic in controlled substances are not unlike any other individual in our society in that they maintain documents and records. These documents and records will normally be retained for long periods regardless of whether their value to the individual has diminished. Often, this type of evidence is generated, maintained and subsequently forgotten about. Hence, documents that one would normally think a prudent person would destroy because of their incriminating nature are still possessed months or even years after they come into the possession of a drug trafficker. These individuals often do not even realize the incriminating nature of the documents they keep.

17. In order to protect their controlled substances and drug proceeds, drug dealers also keep firearms and security systems at their residences.

## V. CONCLUSION

13. Your Affiant believes probable cause exists to search the **TARGET LOCATION**, based upon the probable cause listed above. Your affiant believes evidence of the aforementioned crimes will be located within the **TARGET LOCATION**. Your affiant believes the property described in Attachment B will be located in the **TARGET LOCATION** further described in Attachment A.

*Jeffery A. Kirschweng*
Jeffery A. Kirschweng
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
this __21__ of June, 2023

*Chelsey M. Vascura*
Chelsey M. Vascura
United States Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF PROPERTY TO BE SEARCHED

**The Target Location:** 796 East 4th Avenue in Columbus, Ohio 43201. The premises is a gray multi-story, single family residence located on the north side of East 4th Avenue. This premises includes a detached garage. The front door faces south. The numerals "796" are mounted on a pillar located west of the stairs leading to the front door. The **TARGET LOCATION** includes any outbuildings, vehicles and curtilage.

8

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED

The evidence to be searched for and seized is:

A. Fentanyl and any other controlled substances;

B. Documents and other items tending to show dominion and control over the premises/vehicle, including, but not limited to, bills or other business-related documents, correspondence, photographs;

C. Documents or other items tending to identify co-conspirators and sources, including, but not limited to, letters, notes, memoranda, photographs, address and phone books, maps, organizers, or lists of names;

D. Items commonly used to facilitate drug trafficking, including but not limited to items such as firearms, ammunition, cellular telephones, pay/owe sheets, packaging materials, "cut," scales, and grinders; in addition any storage devices including but not limited to; computers or tablet devices.

E. Likely proceeds of drug trafficking, such as United States currency and other negotiable instruments; and

F. Documents and other items tending to establish or hide the whereabouts of proceeds from drug trafficking, such as safes, keys to other locations, and financial records.

9